***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments before the Full Commission. The appealing party has shown good ground to reconsider the matter. Upon reconsideration of the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. Plaintiff sustained an injury by accident to his back on February 2, 2005, in the course and scope of his employment with defendant-employer.
2. On the date of the injury by accident, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. The Industrial Commission has jurisdiction over the parties and the subject matter.
3. On the date of the injury by accident, an employee-employer relationship existed between plaintiff and defendant-employer.
4. On the date of the injury by accident, defendant-employer was self-insured and Sedgwick CMS was its servicing agent.
5. Plaintiff's average weekly wage was $806.15, yielding a compensation rate of $537.46, as reflected in payroll documentation produced by defendant.
6. The issues before the Commission are:
 a. What is the nature and extent of plaintiff's current disability;
 b. Whether plaintiff is capable of returning to gainful employment of some type; and
 c. Whether plaintiff has cooperated with all reasonable medical and rehabilitation efforts.
 *********** EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Medical records
 b. Stipulated Exhibit #2: Discovery
 c. Stipulated Exhibit #3: Personnel file *Page 3 
 ***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old and obtained his GED. Plaintiff began working for defendant-employer in approximately 2002 or 2003 as a fork lift operator. On February 2, 2005, plaintiff sustained injuries when a lift he was riding fell several feet. The claim was accepted and plaintiff has received benefits from defendant since the accident.
2. Plaintiff first received treatment for his injuries on February 2, 2005 and on February 5, 2005, at U.S. Healthworks. He was diagnosed with a lumbar sprain/strain and placed on modified work restrictions of no lifting over 15 pounds, no forceful pushing or pulling, and no bending, stooping, kneeling or squatting.
3. On February 15, 2005, plaintiff presented to Dr. Richard Ramos with complaints of an aching, burning sensation across his lower back with no radiation into his legs. A physical exam revealed no obvious distress, and Dr. Ramos noted that plaintiff ambulated without an antalgic gait. Plaintiff had good range of motion of the lumbar spine with no tenderness. Strength was noted to be 5 out of 5 and plaintiff could toe/heel walk and had negative straight leg raising. Dr. Ramos did not think that plaintiff had suffered a ruptured disc and recommended outpatient physical therapy, light-duty work with no lifting over 20 pounds, and a return in three weeks.
4. On April 12, 2005, plaintiff returned to Dr. Ramos and reported increased pain with physical therapy. Plaintiff also reported that he was unable to take the prescribed *Page 4 
medication secondary to nausea and headaches. Dr. Ramos recommended that plaintiff undergo an MRI scan of the lumbar spine. Dr. Ramos also allowed plaintiff to return to work with restrictions of no lifting over 20 pounds and no repetitive bending, stooping or squatting.
5. The MRI was scheduled for May 6, 2005. However, when plaintiff arrived he refused to go through with the MRI scan, claiming he was claustrophobic. Plaintiff was rescheduled for an open MRI on May 15, 2005, and was given medications to calm him. Plaintiff stated he took the pills on the wrong day and refused to undergo the MRI in the open unit. Plaintiff demanded that he be put to sleep. Dr. Ramos recommended that plaintiff attempt the open MRI scan with the prescribed medications, and the test was rescheduled for June 14, 2005. Once again, plaintiff refused to complete the test. Dr. Ramos ordered a CT scan, scheduled for June 23, 2005. Because plaintiff was "worried" and "afraid" of the CT scan, it was rescheduled for June 29, 2005; however, plaintiff continued to refuse to undergo the CT scan without first being put to sleep.
6. On July 28, 2005, plaintiff returned to Dr. Ramos and reported he had stopped physical therapy because of the pain and that he was terminated from his job in February because he did not give a urine sample. On physical exam, plaintiff complained of low back pain, but was not in significant distress and no lower extremity swelling was noted. Dr. Ramos opined in his note "I am not saying that he is taking advantage of the system, but it certainly could appear that way." Dr. Ramos recommended an FCE. In the meantime, he released plaintiff to return to work on July 28, 2005, performing light-duty with no lifting over ten pounds. On July 29, 2005, Dr. Ramos discharged plaintiff from his care. *Page 5 
7. On November 1, 2005, the Executive Secretary's Office ordered plaintiff to comply with all reasonable and prescribed treatment as provided by defendant and noted that the refusal to comply "shall bar plaintiff from further compensation."
8. Plaintiff next presented to Dr. John L. Graves who informed plaintiff that he would only treat plaintiff if he underwent an MRI and that he would only schedule the MRI once. Plaintiff complied and underwent the MRI. The December 5, 2005, review of the test showed that the MRI was normal with no evidence of herniation, bulging, or disc dissection. Dr. Graves recommended that plaintiff undergo an FCE and return to work consistent with the results. On January 5, 2006, Dr. Graves stated that plaintiff was capable of performing sedentary/light work based upon plaintiff's FCE and that he did not believe that plaintiff would have any permanent functional impairment. Dr. Graves further recommended that plaintiff begin a work conditioning program.
9. On January 19, 2006, Dr. Graves recommended that plaintiff immediately go back to work at the sedentary level so that he could regain confidence and eventually be engaged in gainful employment. Dr. Graves opined that plaintiff had reached maximum medical improvement and that plaintiff's back pain would eventually resolve. Dr. Graves released plaintiff for sedentary work with a 0% rating to the back. Dr. Graves also recommended that plaintiff undergo comprehensive pain management to include a psychological evaluation which defendant authorized and arranged.
10. On May 16, 2006, plaintiff was seen at The Rehab Center in Charlotte which found him at maximum medical improvement and recommended that he be seen by a psychologist for a "brief" course of counseling for his chronic pain and depression. *Page 6 
11. Plaintiff was referred to Dr. Michael F. Zelson of Moses Cone Outpatient Rehabilitation Center in Greensboro, North Carolina. On September 11, 2006, plaintiff was 20 minutes late for his initial evaluation and thereafter cancelled his first actual appointment. At plaintiff's second appointment, Dr. Zelson noted defiance on plaintiff's part and resistance to the treatment offered. After canceling the next two sessions, plaintiff finally presented for a third visit but terminated it ten minutes into the session stating, "It isn't working out with you. I want a female therapist to talk to. I can't open up to you." Dr. Zelson discharged plaintiff and noted plaintiff's history of alienating and dismissing medical caregivers.
12. From August 16, 2007 through September 10, 2007, plaintiff treated with Paula Katz, a female licensed professional therapist and counselor. On November 14, 2007, Ms. Katz wrote a letter documenting her refusal to continue treatment of plaintiff due to plaintiff's questioning her integrity, ethics and professionalism. She also stated that the appointments had not been productive.
13. On January 16, 2007, defendant initiated vocational rehabilitation to assist plaintiff with a return to gainful employment. Julianne Romano was assigned to the case and determined that plaintiff needed to undergo a vocational assessment to determine his capabilities. Sylvia Henry was assigned to perform the testing and assessment. The assessment was first scheduled at plaintiff's attorney's office for February 23, 2007, but was canceled due to plaintiff's complaints of pain. The assessment was rescheduled for March 12, 2007, at plaintiff's home, as plaintiff had recently terminated his attorney. Only one hour of testing was completed because plaintiff complained of pain. The testing was rescheduled for March 21, 2007.
14. On March 21, 2007, plaintiff again failed to complete the testing, stating that he was having too much pain and could not focus. The appointment was then re-scheduled for *Page 7 
March 29, 2007. Plaintiff later called Ms. Henry and informed her that he could not complete the testing on March 29, 2007, as he had a dental appointment on March 28, 2007 to have a tooth pulled. He also informed Ms. Henry that he did not know when he could meet with her to finish testing. On March 29, 2007, Ms. Henry contacted plaintiff to inquire about his medical status and when he could complete the testing. Plaintiff informed her that he did not go to the dentist. After Ms. Henry was later advised by her superiors to not return to plaintiff's home due to plaintiff's violent actions and temper, she recommended that a male perform the vocational evaluation. Defendant authorized an evaluation by Charles Hook.
15. On May 14, 2007 defendant filed a Form 24 application to suspend or terminate plaintiff's benefits pursuant to N.C. Gen. Stat. § 97-25 for plaintiff's refusal to comply with medical and vocational rehabilitation. On July 17, 2007, the Executive Secretary's Office ordered that defendant was authorized to suspend plaintiff's benefits as of May 14, 2007, but that defendant was to automatically reinstate benefits when plaintiff completed the evaluation with Mr. Hook. Defendant complied with this Order.
16. On August 10 and 17, 2007, Mr. Hook performed a vocational evaluation of plaintiff and prepared a report dated September 4, 2007. Mr. Hook believed that plaintiff made little or no effort in the evaluation. Mr. Hook questioned the validity of his testing, which produced results indicating that plaintiff was functioning at second grade and fourth grade levels. Mr. Hook found plaintiff to be belligerent, and plaintiff made statements such as, "Well, I don't want to be here." Mr. Hook recommended that plaintiff undergo some pain management treatment that would permit him to be re-evaluated for vocational possibilities.
17. On November 28, 2007, Dr. Thomas Gaultieri performed a neuro-psychiatric evaluation of plaintiff. Dr. Gaultieri determined that the evaluation was not indicative of clinical *Page 8 
depression, traumatic brain injury, or post-traumatic stress disorder. Dr. Gaultieri stated that the evaluation clearly indicated exaggeration and fabrication by plaintiff. Dr. Gaultieri further opined that plaintiff was not disabled due to any neuro-psychiatric condition and did not need psychiatric treatment. Plaintiff was noted to be at maximum medical improvement for any problems from the accident in February 2005, with no continuing disability.
18. Plaintiff maintains that he currently suffers from leg, back, balance, high blood pressure, migraine, rapid heart beat, and anxiety and depression issues. He did not have any of these problems before the accident. Plaintiff contends that he can not do anything since the accident, other than sit around and watch his children or watch television. However, he is able to drive to his mother's house which is 45 minutes from his home. His main problem is his right leg that feels like it is going to sleep with pins sticking in it. Plaintiff experiences numbness in the leg whenever he sits for a long period of time. Bending causes problems to plaintiff's lower back.
19. The greater weight of the evidence of record shows that since November 1, 2005, plaintiff has willfully and intentionally refused medical treatment and vocational rehabilitation efforts. The record does not reveal any reasonable basis for plaintiff's refusal to cooperate, and plaintiff does not have any psychological or medical condition that affects his ability to reasonably comply with treatment. Plaintiff has not proven that his pain prevented him from participating in vocational rehabilitation efforts or independent job search efforts. Plaintiff is physically able to seek suitable employment, but has not looked for work.
20. The greater weight of the evidence shows that plaintiff intentionally did not make a valid effort during the vocational testing by Mr. Hook and therefore the Commission gives little weight to the vocational assessment. The Commission finds that by his failure to cooperate *Page 9 
with the vocational testing, plaintiff did not comply with vocational rehabilitation efforts and therefore total disability compensation should not have been reinstated in August 2007.
21. Drs. Ramos, Graves and Gualtieri have released plaintiff to return to work with restrictions but no permanent functional impairment. Since January 16, 2007 defendant has attempted to provide vocational rehabilitation to assist plaintiff in a return to gainful employment. Due to plaintiff's unreasonable refusal to cooperate with vocational rehabilitation, defendant has been unable to determine plaintiff's vocational capabilities in order to locate employment suitable to his capacity.
22. The greater weight of the evidence shows that plaintiff is medically capable of performing sedentary work or at the very least, attempting sedentary work. Since plaintiff has not sought suitable employment or shown that seeking suitable employment would be futile, plaintiff has not proven that he is totally disabled.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 2, 2005, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, which resulted in an injury to his back. N.C. Gen. Stat. § 97-2(6).
2. The Workers' Compensation Act requires the employer to provide medical compensation to an employee who has sustained a compensable injury. N.C. Gen. Stat. § 97-25 provides in pertinent part:
 [t]he refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when *Page 10 
ordered by the Industrial Commission shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal. . . .
N.C. Gen. Stat. § 97-2(19), provides:
 (19) Medical Compensation. — The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances.
3. Plaintiff failed to comply with the medical efforts to return him to work after being ordered to cooperate by the Commission. Accordingly, his benefits were subject to suspension after May 14, 2007. N.C. Gen. Stat § 97-25.
4. Defendant's admission of the compensability of plaintiff's injury by accident on February 2, 2005, does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby'sRoast Beef, 142 N.C. App. 154, 542 S.E.2d 277, disc. reviewdenied, 353 N.C. 729, 550 S.E.2d 782 (2001).
5. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury.Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been *Page 11 
unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages.Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution,108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
6. In the instant case, plaintiff did not meet his burden to show that he continued to be disabled from any employment. His benefits were properly suspended as of May 17, 2007, for his willful refusal to comply with the November 1, 2005 Commission Order. As of the filing of the Deputy Commissioner's Opinion and Award on April 6, 2009, plaintiff had reached maximum medical improvement, was not taken out of work by any medical provider, and was capable of performing sedentary work but failed to make reasonable efforts to find suitable employment. Plaintiff failed to show that any attempt to find employment would be futile. Russell v.Lowes Product Distribution, supra.
7. Plaintiff has not proven that he has been totally disabled or had diminished wage-earning capacity after April 6, 2009, and therefore he is not entitled to payment by defendant of total disability compensation after April 6, 2009. Demery v. Converse,Inc., 138 N.C. App. 243, 530 S.E.2d 871 (2000).
8. Plaintiff is entitled to payment by defendant of medical expenses incurred or to be incurred as the result of his compensable injury, for so long as such medical treatment is *Page 12 
reasonably necessary to effect a cure, provide relief or lessen his disability. N.C. Gen. Stat § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For the period from May 14, 2007 until April 6, 2009, plaintiff's total disability compensation was properly suspended for his failure to comply with the November 1, 2005 Commission Order concerning medical treatment and vocational rehabilitation. After April 6, 2009, plaintiff was no longer totally disabled from any employment and was therefore not entitled to payment of total disability compensation. Defendant is entitled to a credit for any overpayment of compensation during these periods which may be applied to any future compensation payable to plaintiff.
2. Plaintiff's claim for additional indemnity compensation is DENIED.
3. Defendant shall pay all medical expenses related to the compensable injury by accident.
4. Defendant shall pay the costs.
This __ day of October, 2009.
 S/__________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING: *Page 13 
 S/__________ STACI T. MEYER COMMISSIONER
 S/__________ DIANNE C. SELLERS COMMISSIONER